IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DOROTHY BIRL-JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-cv-1059-MHT-TFM |
| | ) | (wo) |
| REGIONS BANK D/B/A REGIONS | ) | |
| MORTGAGE, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. (Doc. 4). Pending before the Court is Defendant's Motion to Dismiss or in the Alternative, Motion for More Definite Statement by Regions Bank (Doc. 11, filed 11/24/14) and Plaintiff's Response thereto (Doc. 15, filed 12/26/2014). For good cause, it is the Recommendation of the Magistrate Judge that the District Court DENY the Motion for More Definite Statement, in full, and GRANT the Motion to Dismiss, in part, and DENY it, in part, as set out below.

**I. DISCUSSION**

This is an employment discrimination case. Plaintiff, a former mortgage loan processor with Regions Bank, ("Regions") brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. §

1981, alleging race discrimination and retaliation.  Additionally, she brings a claim for age discrimination pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA").  This Court has jurisdiction of Birl-Johnson's race discrimination and retaliation claims pursuant to the jurisdictional grant in 42 U.S.C.§ 2000e-5 and 42 U.S.C. 12117 as well as federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  If any of these claims survive the motion to dismiss, the Court may exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(a).

## A.  FACTS

In her Complaint, Dorothy Birl-Johnson ("Birl-Johnson"), a pro se litigant, alleges that Regions discriminated against her on the basis of her age and race and retaliated against her for making a complaint against another loan officer after which she alleges Regions reduced the number of loans assigned to her for processing.  Thus, reading the complaint liberally as the Court is required to do when reviewing a pro se Plaintiff's filing[1], the Court recognizes that Plaintiff brings a race discrimination claim for unlawful demotion and constructive discharge and a retaliation claim based upon her internal complaint and her EEOC charge filed November 25, 2013.  She also brings an age discrimination claim alleging that loan officers were reassigned from her to a younger loan processor.  (Doc. 1 at ¶¶ 9, 91).  She

---

[1] All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe a pro se litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). (Citations omitted).

further alleges claims under an unidentified whistleblower statute arising from an "incident that occurred with a loan officer (Todd Hannaford-a white male) that she was in disagreement with regarding the processing of a loan file." (Doc. 1 at ¶ 10).  She also claims that Regions breached an implied contract to her arising from Plaintiff's "reasonable expectation of equal treatment in employment opportunities and in terms and conditions of work." (Doc. 1 at ¶¶ 130-131).  Plaintiff further alleges that Regions intentionally inflicted emotional distress upon her by its actions.  (Doc. 1 at ¶¶ 126,137).  She seeks compensatory and punitive damages, attorney's fees, and costs of litigation.

In her EEOC charge filed November 25, 2013, Plaintiff alleges the following:

I am Black.  I was hired as a Mortgage Loan Processor in August 2010. According to my annual employee reviews, I have performed my job in a satisfactory manner.  On May 29, 2013, I had informed my supervisor that I would be contacting the Regions HR Corporate office regarding an incident that occurred with a loan officer that I was in disagreement with.  On May 30, 2013, I contacted the Regions HR Corporate office to report this incident by leaving a brief voice message on the Senior Vice President's phone.  On May 31, 2013, I was given a written warning from my supervisor with the presence of my manager.  I stated that this was an erroneous write up and I refused to sign it, due {sic} I informed them that I will provide them with a written rebuttal.  On June 3, 2013, I provided the rebuttal and documentation to support the erroneous written warning.  I also contacted the HR Corporate office to perform a phone complaint with a representative within that office. At that time, I was informed that I would be receiving a follow up regarding my complaint.

In July 2013, my manager had removed the majority of the loan officers from working with me.  The manager stated that the loan officers had informed her verbally that they wanted to be removed from me as their processor because of the time frame that I was reviewing their files.  I do not believe that this is an accurate statement, because I have received emails from loan officers stating differently.  Therefore, I received what I considered as a demotion,

which reduced my production.  On September 6, 2013, I made a request via
email to have my manager and supervisor to explain why the decreased
number of loan officers assigned to me verses all of the other processors.  My
supervisor accepted to meet with me on September 9, 2013, but the manager
refused to be in the meeting to discuss this issue.

On September 11, 2013, I contacted the HR Corporate office via email,
informing the HR Senior Vice President that I believed that I am being
retaliated against for making the initial complaint.  The HR Corporate office
has not responded to my complaints made on June 3, 2013, July 19, 2013, and
September 11, 2013.

I believe that I have been discriminated against, harassed and retaliated against
because of my race, Black in violation of Title VII of the Civil Rights Act of
1964, as amended.

(Doc. 1-1 p.8-9).  Plaintiff states in her Complaint that she resigned her employment with

Regions  because Regions' Human Resources personnel "demonstrated that she was not of

any importance . . . [t]hat Regions' Core Values did not apply to her as an employee . . .  Do

what is right . . . Put people first and that is what made her decision to resign from the

company."  (Doc.1 para. 77).  The Court held a scheduling and status conference and motion

hearing on August 12, 2015.  At that time, Plaintiff recounted the facts underlying her claims.

After hearing the Plaintiff's recitation of facts in open court and reviewing the EEOC charge,

Plaintiff's Complaint, Defendant's Motion to Dismiss or for a More Definite Statement, and

the briefs of the parties, the Court makes the following Report and Recommendation.

## B. STANDARD OF REVIEW

"A Rule 12 (b)(6) motion tests the legal sufficiency of the complaint. . . .[I]n order to

survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts

to state a claim to relief that is plausible on its face.'" *Coggins v. Abbett,* 2008 WL 2476759

*4 citing *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955) (2007).   The

standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly* and refined

in *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949 (2009) as follows:

> Two working principles underlie our decision in *Twombly.*  First, the tenet that
> a court must accept as true all the allegations contained in a complaint is
> inapplicable to legal conclusions.   Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do not suffice.   Rule
> 8 marks a notable and generous departure from the hypertechnical, code-
> pleading regime of a prior era, but it does not unlock the doors of discovery for
> a plaintiff armed with nothing more than conclusions.   Second, only a
> complaint that states a plausible claim for relief will . . . be a context-specific
> task that requires the reviewing court to draw on its judicial experience and
> common sense.   But where the well-pleaded facts do not permit the court to
> infer more than the mere possibility of misconduct, the complaint has alleged -
> but it has not shown - that the pleader is entitled to relief.

*Iqbal,* 129 S.Ct. at 1949-50 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the

complaint that are not entitled to the assumption of truth" because they are conclusory.   *Id.,*

at 195; *Mamani v. Berzain,* 2011 U.S. App. Lexis 17999, at *12 (11th Cir. Aug. 29, 2011)

("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory

allegations in the Complaint.").   After conclusory statements are set aside, the *Twombly-Iqbal*

analysis requires the Court to assume the veracity of well-pleaded factual allegations, and

then to determine whether they "possess enough heft to set forth 'a plausible entitlement to

relief.'"   *Mack v. City of High Springs,* 486 Fed. App'x 3, 6 (11th Cir. 2012) (quotation

omitted.)   "To survive a motion to dismiss, a complaint need not contain 'detailed factual

allegations' but instead the complaint must contain 'only enough facts to state a claim to relief that is plausible on its face.'" *Maddox v. Auburn Univ. Fed. Credit Union,* 2010 U.S. Dist. Lexis 127043 at *4.   Establishing facial plausibility, however, requires more than stating facts that establish mere possibility.  *Mamani,,* 2011 U.S. App. Lexis 17999, at *22-*23 ("The possibility that -if even a possibility has been alleged effectively - these defendants acted unlawfully is not enough for a plausible claim.").  Plaintiff is required to "allege more by way of factual content to nudge [her] claim . . . across the line from conceivable to plausible."  *Iqbal,* 129 S. Ct. at 1952 (internal editing and citation omitted.)

## C.  ANALYSIS

### 1.  Age Discrimination

Applying the more liberal pleading standard adopted for *pro se* complaints, *GJR Investments, Inc.*, 132 F.3d at 1369, the Court understands Plaintiff's age discrimination claim to be based on her assertion that Plaintiff, who is over 40, had loan officers assigned away from her to a "25 year [] old [who] had no experience in processing of mortgage loans." (Doc. 1 at ¶¶ 9, 91).  However, she also asserts in her Complaint that the younger employee to whom loan officers were assigned got that assignment because she was the best friend of the manager's daughter.  (Doc. 1 at ¶ 91).  Thus, Plaintiff's Complaint plainly states a reason other than age for the reassignment and demonstrates that she fails to plead a plausible claim based on age discrimination.  Although a disparate treatment claim exists under the ADEA; such a claim "cannot succeed unless the employee's protected trait actually played a role in

that process and had a determinative influence on the outcome." *Hazen Paper Co., v. Biggins,* 507 U.S. 604, 611 (1993). Accordingly, the Court concludes Plaintiff fails to state an ADEA claim because her factual statements pertaining to this claim do not "possess enough heft to set forth 'a plausible entitlement to relief.'" *See Mack,* 486 Fed. App'x at 6.

Furthermore, after carefully reviewing Plaintiff's EEOC charge (Doc. 1-1 pp. 8-9)[2], the Court concludes that Plaintiff did not include any statement which could be interpreted as an age discrimination claim. Thus, Plaintiff did not exhaust her administrative remedies for an age discrimination claim. *See, e.g., Cook v. American Gen. Life and Accident Ins. Co.,* 952 F. Supp. 1505, 1513 n. 9 (M.D. Ala. 1996) ("The scope of a judicial complaint under the ADEA is limited to the acts of discrimination contained in the  EEOC charge or claims 'like or related' to the claims raised in the charge." (citing *Coon v. Georgia Pacific Corp.,* 829 F.2d1563, 1569 (11th Cir. 1987)). Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be granted on this claim.

## 2.  Title VII and 42 U.S.C. § 1981 Race Discrimination Claims

Cognizant of the requirement that this Court must liberally construe a pro se Plaintiff's Complaint, *see GJR Investments, Inc.*, *id.,* the Court turns its attention to whether Plaintiff's factual statements pertaining to her race discrimination claim for unlawful demotion,

---

[2]  On a 12(b)(6) motion, a Court must limit its consideration to the complaint, the written instruments attached as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."*Hodge v. Orlando Utilities Commission,* 2009 WL 5067758*3 (M.D. Fla.) citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323 (2007).

constructive discharge[3] and retaliation[4] "possess enough heft to set forth 'a plausible entitlement to relief.'" *See Mack, id.* To establish a *prima facie* case for disparate treatment in a race discrimination case, Plaintiff must demonstrate that (1) she is member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorable than she was treated; and (4) she was qualified to do the job. *See Burke-Fowler v. Orange County,* 447 F.3d 1319, 1323 (11th Cir. 2006).

Under the burden shifting framework of Title VII, generally a Plaintiff must first establish a prima facie case of discrimination, if she does, then the employer must demonstrate "some legitimate, nondiscriminatory reason" for its employment decision. If the employer satisfies its burden, "the presumption raised by the prima facie case is rebutted." Because the burden of persuasion remains with the employee, the plaintiff must demonstrate that the seemingly legitimate reason given by the employee was pretextual. However, if the employer satisfies its burden "the presumption of discrimination 'drops from the case' and the framework shifts back to placing the burden on the plaintiff to prove "more probably than

---

[3] Plaintiff's racial discrimination claims resulting in unlawful demotion and constructive discharge are premised on disparate treatment. Thus, the elements of these claims under Title VII and 42.U.S.C. § 1981 are identical. *Rice-Lamar v. City of Fort Lauderdale, Fla.,* 232 F. 3d 836, 843 n. 11 (11th Cir. 2000); *Lincoln v. Board of Regents,* 697 F. 2d 928, 935 n. 6 (11th Cir.1983).

[4] A 42 U.S.C.§ 1981 claim for retaliation based on racial discrimination is viable whether the Plaintiff is a victim of discrimination or Plaintiff takes a position opposing race discrimination. *Potter v. Pinellas Park Water Management District,* 2014 WL5599211 *2 *citing Tucker v. Talladega City Schools,* 171 Fed. Appx. 289, 295 (11th Cir. 2006).

not, that the employer took an adverse employment action against [her] on the basis of a protected personal characteristic.'" *Kidd v. Mando American Corp.,* 731 F.3d 1196, 1202 (11th Cir. 2013) (Citations omitted.)   The court will now address each of these claims separately below.

### a.  Unlawful demotion

Plaintiff alleges that on May 29 and 30 of 2013, she advised her supervisor, Carrie Hogue, that she would be contacting Regions HR Corporate office regarding an incident with a white male loan officer - Todd Hannaford - involving his handling of a loan file.  (Doc. 1 ¶¶ 10, 11).  On May 31, 2013, Plaintiff was informed that Hannaford had made a complaint against her and this was the basis of a written warning given to Plaintiff.  Plaintiff refused to sign the warning.  (Doc. 1 ¶¶ 13, 14).  On June 3, 2013, Plaintiff complained over the phone to Regions HR Representative, Matthew McWilliams, about loan officer Hannaford's processing of a loan file.  (Doc. 1 ¶ 17).

Sometime in July 2013, Plaintiff alleges that Regions Manager, Rhonda McGough "removed the majority of the loan officers from working with Johnson as their processor and assigned Johnson as a Back-up Processor and to process loan files that are USDA for the Florida offices."  Plaintiff alleges McGough told her "that the loan officers had informed her verbally that they wanted to be removed from Johnson as their processor because of time frame that Johnson was reviewing files."  (Doc. 1 ¶ 24).  Plaintiff alleges this was "a demotion, which reduced/decreased Johnson's production and pay due to the manager

removed loan officers from Johnson and gave them to the three (3) newly hired white processors." (Doc. 1 ¶ 26). Plaintiff claims that she was qualified to do her job. (Doc . 1 ¶35).

To state a claim for unlawful demotion, Plaintiff must demonstrate that she was assigned "significantly different responsibilities" or her employer made a decision that "caus[ed] a significant change in benefits." *Kidd,* 731 F.3d at1203 (Citations omitted.) Accepting as true the allegations stated above, *see Iqbal,* 129 S.Ct. at 1949-50, the Court concludes that Plaintiff's allegations of unlawful demotion "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack,* 486 Fed. App'x at 6. Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be denied on this claim.

### b. Constructive Discharge

In order to state a claim for constructive discharge an employee must demonstrate that the employer has "impos[ed] working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Beltrami v. Special Counsel, Inc.,* 170 Fed. Appx. 61, 62 (11th Cir. 2006). Plaintiff alleges that because she complained about Hannaford's loan practices and because she filed an EEOC charge, Regions generally, and Ms. Ramsey, Regions Human Resources Vice President, specifically, demonstrated to her "that she was not of any importance" to them by refusing to return her phone calls or take any action on her complaints. Plaintiff alleges that these actions or inactions caused her to resign. (Doc. 1 ¶¶ 10, 11, 17, 24, 26, 57, 76, 77). These allegations

as a matter of law do not state a claim for constructive discharge because they do not demonstrate "a high degree of deterioration in working conditions." *Jones v. USA Petroleum Corp.,* 20 F.Supp.2d 1379, 1384 (S.D. Ga. 1998) (Motions to dismiss granted because allegations of sexual harassment did not rise to the level of creating intolerable working conditions forcing employee to resign).  Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be granted on this claim.

### c. Retaliation

In order to state a claim for retaliation, Plaintiff must demonstrate that she has engaged in an activity protected under Title VII; she suffered a materially adverse action; and there was a causal connection between the protected activity and the adverse action.  *Kidd,* 731 F.3d at 1211 (Citations omitted.)  Liberally interpreting the Plaintiff's retaliation claim, the Court understands it has two parts.  First, Plaintiff complains that Regions retaliated against her by assigning loan officers away from her for making an internal complaint about Hannaford, a white loan officer's, handling of loans.  (Doc. 1 ¶¶24, 26).  This is essentially the  same claim for unlawful demotion discussed above.  Second, Plaintiff complains that Regions retaliated against her for filing an EEOC complaint by demonstrating to Plaintiff "that she was not of any importance" to Regions generally and to Ms. Ramsey, Regions Human Resources Vice President, specifically.  Plaintiff alleges that these actions caused her to resign.  (Doc. 1 ¶ 57,76,77).  This is essentially a restatement of the constructive discharge claim discussed above.

Accordingly, the Court concludes that the Motion to Dismiss as to Plaintiff's retaliation claim premised upon the alleged unlawful demotion is due to be denied and retaliation claim premised upon the alleged constructive discharge is due be granted.

### 3. Whistleblower Claims

Plaintiff refers to claims for violations of unidentified whistleblower statutes in Counts I, VIII and X.  It appears to the Court that these claims are based on Plaintiff's allegations involving an "incident that occurred with a loan officer (Todd Hannaford-a white male) that she was in disagreement regarding the processing of a loan file." (Doc. 1 at ¶ 10). Plaintiff fails to identify a single statute under which she attempts to bring a whistleblower claim.  Rather Plaintiff alleges in Count X "All of the actys [sic] complained of above, violate plaintiff's rights under various federal and state whistleblower ststutes [sic]." (Doc.1 ¶ 123).

Alabama law has several whistle blower statutes.  However, none of these statutes apply to Plaintiff's allegations.  *See Ala. Code* §§ 36-26A -1 to -6 (affording whistleblower protection to *state* employees); *Ala. Code* § 25-5-11.1 (whistleblower protection limited to workers' compensation cases); *Ala. Code* § 36-25-24 (whistleblower protection limited to ethics violation cases).  In contrast, there are at least 19 federal whistleblower laws – none of which Plaintiff has identified as giving her a valid cause of action in this case.  *See generally* Whistleblower Protections Under Federal Law: An Overview, Congressional Research Service R-42727 (Sept. 13, 2012 )(*available at*

http://fas.org/sgp/crs/misc/R42727.pdf).  The Court understands Plaintiff's whistleblower claims to be premised on her disagreement with Todd Hannaford.  (Doc. 1 ¶ 18) ("Johnson informed Mr. McWilliams of how harassing and demanding that this loan officer has been and of unethical acts by this loan officer"); (Doc. 1-1, at 45-46)("[Hannaford] is known for always demanding that his loans are processed immediately and I feel that I am being harassed by him . . .  I am not the only Processor that has experienced this with [Hannaford]. Everyone complains about it . . . ")[5].  Even if Plaintiff thought Hannaford was "demanding" or thought he performed "unethical" acts, she has identified nothing in Hannaford's conduct which was in violation of any law.  Accepting as true the allegations stated above, *see Iqbal,* 129 S.Ct. at 1949-50, the court concludes that Plaintiff's allegations of whistleblower violations do not "possess enough heft to set forth 'a plausible entitlement to relief.'"  *Mack,* 486 Fed. App'x at 6.  Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be granted on this claim.

### 4.  Claim for Breach of Implied Contract

In Count XII, Plaintiff alleges that Regions breached an implied contract between Regions and Plaintiff, which purportedly arose from Plaintiff's "reasonable expectation of equal treatment in employment opportunities and in terms and conditions of work." (Doc. 1 at ¶¶ 130-131).  Alabama law provides that "in the absence of a contract providing otherwise,

---

[5]On a 12(b)(6) motion, it is proper for the Court to consider exhibits which are attached to the Complaint.  Indeed, Plaintiff attached to the Complaint, among other exhibits, her rebuttal submission to Carrie Hogue, which contains the above statements.  (Doc. 1-1 pp.44-46).  *Hodge,* 2009 WL 5067758*3 (M.D. Fla.) (Citations omitted).

employment in this state is at-will, terminable at the will of either party." *Ex parte Amoco Fabrics & Fibers Co.,* 729 So. 2d 336, 339 (Ala. 1998) (citing *Bell v. South Central Bell,* 564 So. 2d 46 (Ala. 1990)."And an extension of this principle and logic would be that, absent a contract providing otherwise, **[an]employee may be demoted, denied a promotion or otherwise adversely treated for any reasons, good or bad, or even for no reason at all.** The Alabama Supreme Court has, rightly or wrongly, jealously guarded this at-will status and recognized only statutory exceptions (for example, worker's compensation restrictions) and a few narrow non-statutory exceptions." *Palmer v. Infosys Techs. Ltd, Inc.,* 888 F. Supp. 2d 1248, 1252 (M.D. Ala. 2012) (emphasis added) (citing *Amoco,* 729 So. 2d at 339)("Among those [non-statutory] limitations is an exception, recognized by [the Alabama Supreme] Court, for implied contracts arising out of the use of an employee handbook . . . [T]he provisions of an employee handbook can become a binding unilateral contract, thereby altering an employment relationship's at-will status . . . [But] not all employer communications would justify such treatment.   Rather, **only those employer communications meeting the traditional requirements for the formation of a unilateral contract - an offer, communication, acceptance, and consideration – will bind the parties."**   (Emphasis added).

Plaintiff fails to identify any communication from Regions "meeting the traditional requirements for the formation of a unilateral contract." *Id*. To the extent that Plaintiff

alleges that Regions' Code of Business Conduct and Ethics (the "Handbook")[6] constitutes an offer or communication, the court concludes that the language of the Handbook precludes any claim based upon an implied contract.  Indeed, the Handbook states as follows:

> EMPLOYMENT RELATIONSHIP
>
> This Code of Business Conduct and Ethics applied to the associates, officers and directors for all of Regions Financial Corporation, subsidiaries, and affiliates.  It neither constitutes nor should be construed to constitute a contract of employment for a definite term or a guarantee of continued employment. These policies and standards do not alter "at will" employment relationships. This means that we recognize an associate's right to resign at any time for any reason; similarly, Regions, or its affiliates, may terminate an associate, at any time, with or without cause.

The Handbook (Doc. 1-1 at 143-64), at 144.  Thus, accepting as true the allegations stated above, *see Iqbal,* 129 S.Ct. at 1949-50, the Court concludes that Plaintiff's allegations for breach of implied contract do not "possess enough heft to set forth 'a plausible entitlement to relief.'"  *Mack,* 486 Fed. App'x at 6.  Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be granted on this claim.

### 5.  Claim for Tort of Outrage

Plaintiff complains that "[e]ach and every one of the actions Regions complained of herein was committed with the sole specific intent to inflict emotional mental distress upon Johnson, although Johnson makes no mental distress claim in contravention of Alabama law."))  *See* Doc. 1 at ¶¶ 126, 137.  Liberally construing the complaint as the Court is

---

[6]On a 12(b)(6) motion, it is proper for the Court to consider Regions Employee Handbook because it is an exhibit which is attached to the Complaint.  *Hodge,* 2009 WL 5067758*3 (M.D. Fla.) (Citations omitted).  (Doc. 1-1 pp.143-64).

required to do, *see GJR Investments, Inc.*, *id.*, the Court interprets this statement as Plaintiff's

attempt to bring a claim for outrage.  Under Alabama law, the tort of outrage is limited to

four circumstances:

(1)  wrongful conduct in the family-burial context;

(2)  barbaric methods employed to coerce an insurance settlement;

(3)  egregious sexual harassment; and

(4)  'against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction.'

*Estate of Crystal Reed,* 2012 U.S. Dist. Lexis 41324, at * 21 (quotation marks and citations

omitted).  Even liberally construing the complaint, the Court concludes that none of

Plaintiff's allegations relate to these limited and rare circumstances.

Furthermore federal courts have likewise acknowledged that "the tort of outrage is

extremely limited."  *See, e.g., Maske v. The Cone Co.,* 2011 U.S. Dist. Lexis 114589, *12-13

(M.D. Ala. 2011) (dismissing outrage claim where female plaintiffs alleged, among other

things, that male employees openly discussed sex acts in front of them, company's owner

made comments about which female employees were "built for sex," males openly watched

pornography at their computers, and owner repeatedly "put his face between the breasts of

female employees" and rubbed their buttocks);  *see also Smiley v. Ala. Dept. of Trans.,* 778

F. Supp. 2d 1283, *1290-91, *1303 (M.D. Ala. 2011) (dismissing outrage claim in a race

discrimination case in which plaintiff alleged, among other things, that his white supervisor

made him request permission to go to the men's room, required him to ask for permission to drink from a water fountain a few feet from his work area, violated ALDOT personnel policy, and suspended him from work; outrage does not recognize recovery for "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities"). Thus, accepting as true the allegations of Plaintiff's complaint, *see Iqbal,* 129 S.Ct. at 1949-50, the Court concludes that Plaintiff's allegations for outrage do not "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack,* 486 Fed. App'x at 6. Accordingly, the Court concludes that Defendant's Motion to Dismiss is due to be granted on this claim.

## II. CONCLUSION

Accordingly, for the foregoing reasons, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's Motion for More Definite Statement be **DENIED** and that the Motion to Dismiss be **GRANTED** in part and **DENIED** in part as follows:

1. Defendant's Motion to Dismiss be GRANTED on Plaintiff's claim brought pursuant to the ADEA;

2(a). Defendant's Motion to Dismiss be DENIED on Plaintiff's Title VII and 42 U.S. C.§ 1981 Claims for race discrimination in employment based on unlawful demotion.

2(b). Defendant's Motion to Dismiss be GRANTED on Plaintiff's Title VII and 42 U.S.C. § 1981 Claims for race discrimination in employment based on constructive discharge.

2(c). Defendant's Motion to Dismiss be DENIED on Plaintiff's Title VII and 42

U.S.C. § 1981 Claims for retaliation based on unlawful demotion and  Defendant's Motion to Dismiss be GRANTED on Plaintiff's Title VII and 42 U.S.C. § 1981 Claims for retaliation based on constructive discharge.

3.   Defendant's Motion to Dismiss be GRANTED on Plaintiff's Whistleblower Claims.

4.  Defendant's Motion to Dismiss be GRANTED on Plaintiff's Claim for Breach of Implied Contract.

5.  Defendant's Motion to Dismiss be GRANTED on Plaintiff's Claim for Tort of Outrage.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **September 9, 2015**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein*

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 26th day of August, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE